UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

RODNEY FRISBY,

          Plaintiff,

v.

UNKNOWN COBAR et al.,

          Defendants.
_____/

Case No. 2:22-cv-87

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lamb, Bauman, and Sherbrook. Plaintiff's Eighth Amendment claims against Defendants Cobar, Fritz, Shilling, and Martin will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.[2] The events about which he complains, however, occurred at the Newberry Correctional

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2 profile.aspx?mdocNumber=926352 (last visited Aug. 2, 2022).

Facility (NCF) in Newberry, Luce County, Michigan. Plaintiff sues NCF Warden Catherine S. Bauman and the following NCF medical personnel: Medical Staff Unknown Cobar and Vicki Sherbrook; Registered Nurses Beth Fritz, Lisa Shilling, and Patricia Lamb; and Doctor Unknown Martin.

In Plaintiff's complaint, he alleges that in April of 2020, due to the COVID-19 pandemic, all prisoners at NCF were given face masks to wear. (Compl., ECF No. 1, PageID.4.) "Some time later, [Plaintiff] noticed a breakout to [his] lips that over time had seemed to worsen." (*Id.*) Plaintiff "wrote medical [in] May 2020" and had an appointment at which tests were run, all of which came back "NEG." (*Id.*) Plaintiff was given an antibiotic ointment, which Plaintiff contends did not help and instead "triggered the problem." (*Id.*) Plaintiff continued to notify "medical of [his] complications, but was denied medical attention and treatment multiple times due to COVID reaching the facility." (*Id.*) Specifically, Plaintiff alleges that on June 6, 2020, October 10, 2020, and December 19, 2020, Defendant Fritz denied Plaintiff "medical services." (*Id.*) Plaintiff also alleges that on October 31, 2020, May 25, 2021, May 31, 2021, and June 5, 2021, Defendant Shilling denied him medical care. (*Id.*)

Further, Plaintiff alleges that on November 5, 2020, Correctional Officer Jennings (not a party) notified Defendant Cobar about Plaintiff's issue as she made morning rounds, and Defendant Cobar advised Plaintiff that "they ha[d] a lot going on with more serious problems" and that Plaintiff was "going to have to play detective and figure it out [himself]." (*Id.*) Plaintiff states that Defendant Cobar denied him medical care. (*Id.*) Subsequently, Shelly Mctrivier (not a party)

4

denied Plaintiff a refill for Betamethasone.[3] (*Id.*) Defendant Lamb then denied Plaintiff's step II grievance "in support of NCF medical staff['s] actions." (*Id.*)

On November 10, 2020, while Defendant Bauman was in Plaintiff's unit, he "addressed [his] problem and complications to her, as well as the responses [he] was receiving from her medical staff." (*Id.*) Defendant Bauman stated that Plaintiff was getting proper treatment and then "walk[ed] off" as Plaintiff was speaking to her. (*Id.*, PageID.4–5.)

At Plaintiff's medical appointment in February of 2022,[4] Defendant Martin advised Plaintiff that he did not see anything wrong with Plaintiff's lips and that they looked normal. (*Id.*, PageID.5.) Plaintiff states that Defendant Martin "also admitted that he's never dealt with such a[n] issue." (*Id.*) Plaintiff requested to see a dermatologist, and Defendant Martin told Plaintiff that he "doubt[ed] if they'll let [Plaintiff]." (*Id.*) When Plaintiff asked for antibiotics due to his concern that this was "some sort of fung[a]l infection," Defendant Martin advised Plaintiff to come back to medical if he had a discharge from his lips and indicated that Plaintiff would not receive any antibiotics unless there was a discharge. (*Id.*)

On March 23, 2022, Plaintiff "woke up with two pale irr[i]tating spots on [his] lips discharging." (*Id.*) Plaintiff notified the officer in his unit and was given a "pass for medical." (*Id.*) Plaintiff happened to see Defendant Martin arriving for work, and Plaintiff notified him of the issue with the discharge from his lips. (*Id.*) Defendant Martin told Plaintiff to "wait in the chairs

---

[3] Plaintiff identifies this medication as "bethemethasone" (Compl., ECF No. 1, PageID.4); however, it is likely that Plaintiff intended to identify Betamethasone, which is a "cortisone-like medicine or steroid" that is "used to help relieve redness, itching, swelling, or other discomforts caused by certain skin conditions." *Betamethasone Dipropionate (Topical Application Route)*, Mayo Clinic, http://www.mayoclinic. org/drugs-supplements/beamethasone-dipropionate-topical-application-route/description/drg-20073667 (last visited Aug. 2, 2022).

[4] Plaintiff identifies the date as "Feb 2023," however, it is clear that Plaintiff intended to reference February 2022. (Compl., ECF No. 1, PageID.5.)

out front for [Plaintiff] to be called." (*Id.*) A few minutes later, Defendant Cobar told Plaintiff that he needed to submit a medical kite. (*Id.*) Plaintiff told Defendant Cobar about his conversation with Defendant Martin, and Defendant Cobar told Plaintiff he would not be seen until he submitted a medical kite. (*Id.*) Plaintiff contends that if he submitted a medical kite, it would take two days to be seen. (*Id.*) Plaintiff alleges that he "was refused medical attention there again[,] so he left and had to suffer these complication[s] further." (*Id.*) On April 19, 2022, Plaintiff states that when he woke up, his "lips were swollen/discharging." (*Id.*) Correctional Officer Gerett (not a party) called medical and Plaintiff "was denied medical attention and was told to put [a] kite in." (*Id.*)

Plaintiff contends that he has "been dealing with this for almost 2 y[ears] now and [it is] getting worse," explaining that "[e]veryday [his] lips are really tight, irr[i]tated, they discharge at times[;] when [he] open[s] [his] mouth to eat, brush [his] teeth, floss it hurts, bleeds[;] [it is] getting so [much] worse[;] . . . [his] lips are discolored also and scabbing all around the edges." (*Id.*) Plaintiff states that his lips are "extremely dr[ied] out no matter what [he] uses," and he needs to see a dermatologist. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment. (*See id.*, PageID.6.) As relief, Plaintiff requests injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Defendant Sherbrook**

Plaintiff names NCF medical staff member Vicki Sherbrook as a Defendant; however, Plaintiff fails to name Defendant Sherbrook in the body of his complaint. (*See generally* Compl., ECF No. 1.) It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is

named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, because Plaintiff fails to name Defendant Sherbrook in the body of his complaint, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Furthermore, to the extent that Plaintiff intended to hold Defendant Sherbrook liable for the actions of any subordinates, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

8

has failed to allege that Defendant Sherbrook engaged in any active unconstitutional behavior. Accordingly, for these reasons, Plaintiff fails to state a claim against Defendant Sherbrook.

**B.     Eighth Amendment**

Plaintiff alleges that Defendants Cobar, Fritz, Shilling, Lamb, Bauman, and Martin violated his Eighth Amendment rights by denying him medical care and by providing inadequate medical care. (Compl., ECF No. 1, PageID.4–5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding

9

that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

In this action, Plaintiff contends that over an approximately two-year period, Plaintiff had a breakout on his lips that "seemed to worsen" over time. (Compl., ECF No. 1, PageID.4–5.) Specifically, Plaintiff describes the condition as follows: "[e]veryday [his] lips are really tight, irr[i]tated, they discharge at times[;] when [he] open[s] [his] mouth to eat, brush [his] teeth, floss it hurts, bleeds[;] [it is] getting so [much] worse[;] . . . [his] lips are discolored also and scabbing all around the edges." (*Id.*, PageID.5.)

Although dry skin experienced by the general population is not typically a sufficiently serious medical condition to state a deliberate indifference claim, *see, e.g.*, *Wells v. Grahn*, No. 1:13-cv-608, 2014 WL 2616643, at *2 (W.D. Mich. June 12, 2014) ("There was nothing unusual or pathological about plaintiff's dry skin. It was similar to the dry skin experienced by the general population, which is readily treated with over-the-counter products."), some courts have held that more severe cases where, for example, an inmate's skin is "so cracked and dry from his condition that it ble[e]d[s]," may sufficiently allege a serious medical condition. *See, e.g.*, *McKeithan v. Beard*, 322 F. App'x 194, 198 (3d Cir. 2009); *cf. Johnson v. Sullivan*, No. CV-07-00574-ROS, 2010 WL 2850787, at *2 (E.D. Cal. July 19, 2010) (discussing that "'[s]erious medical needs' include 'a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain,'" and that there was "no evidence that the skin condition affected Plaintiff's daily activities or that it caused him substantial pain" (citation omitted)). Here, taking Plaintiff's factual allegations as true and in the light most

12

favorable to him, the allegations suggest that Plaintiff's lip condition included bleeding and a discharge, and had some impact on his daily activities. Under these circumstances, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test with respect to lip condition.

### 2. Subjective Component

#### a. Defendant Lamb

Plaintiff's sole allegation against Defendant Lamb is that she denied Plaintiff's step II grievance "in support of NCF medical staff['s] actions." (Compl., ECF No. 1, PageID.4.) However, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff's sole allegation against Defendant Lamb is that she denied an administrative grievance, Plaintiff fails to state a claim under the Eighth Amendment against Defendant Lamb. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Lamb will be dismissed.

#### b. Defendant Bauman

With respect to Defendant Bauman, the warden at NCF, Plaintiff alleges that on November 10, 2020, while Defendant Bauman was in Plaintiff's unit, he "addressed [his] problem and complications to her, as well as the responses [he] was receiving from her medical staff." (Compl., ECF No. 1, PageID.4.) Defendant Bauman stated that Plaintiff was getting proper treatment and then "walk[ed] off" as Plaintiff was speaking to her. (*Id.*, PageID.4–5.)

As an initial matter, to the extent that Plaintiff intended to hold Defendant Bauman liable for the actions of her subordinates, Defendant Bauman may not be held liable for the unconstitutional conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A claimed

constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Furthermore, with respect to non-medically trained prison staff members, such as Defendant Bauman, non-medically trained prison staff members are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). Here, Plaintiff alleges that he tried to alert Defendant Bauman to the allegedly inadequate medical care that he was receiving from medical staff members, and that Defendant Bauman told him he was receiving "proper treatment." (Compl., ECF No. 1, PageID.4–5.) Although it is clear that Plaintiff believed that he was receiving inadequate medical care from medical staff, Defendant Bauman, as a non-medically trained prison official, cannot be held liable for deferring to medical staff's treatment decisions when Defendant Bauman believed them to be reasonable at the time. *See, e.g.*, *McGaw*, 715 F. App'x at 498.

Accordingly, for these reasons, Plaintiff fails to an Eighth Amendment against Defendant Bauman.

### c. Defendants Cobar, Fritz, Shilling & Martin

Plaintiff alleges that starting in April of 2020 and continuing to the date he filed this action, he alerted Defendants Cobar, Fritz, Shilling, and Martin to his ongoing, and worsening, issues with his lips. And Plaintiff alleges that, on multiple occasions, he asked for medical care to alleviate his symptoms, but these Defendants denied his requests for medical care or provided inadequate medical care. Although Plaintiff has by no means proven deliberate indifference, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, Plaintiff's Eighth Amendment claims against Defendants Cobar, Fritz, Shilling, and Martin may not be dismissed on initial review.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Lamb, Bauman, and Sherbrook will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Cobar, Fritz, Shilling, and Martin remain in the case.

An order consistent with this opinion will be entered.

Dated: September 19, 2022

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge