UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY FRISBY #926352,

    Plaintiff,

v.

UNKNOWN COBAR, et al.,

    Defendants.

_____/

Case No. 2:22-cv-00087

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF Nos. 26 and 33.) Plaintiff has not responded.

On April 25, 2022, Plaintiff – State Prisoner Rodney Frisby – filed an unverified complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Frisby asserts that he was denied medical care for a skin infection of some type, which he calls a "breakout", that was allegedly caused by the face masks issued by prison officials at the Newberry Correctional Facility (NCF) to protect against Covid-19. (ECF No. 1.)

The complaint identified seven Defendants. On September 19, 2022, the Court issued an Opinion and Order dismissing Defendants Lamb, Bauman, and Sherbrook. (ECF Nos. 9 and 10.) The Court allowed Plaintiff's Eighth Amendment claims against

Registered Nurse (RN) Kovar (named Cobar in the complaint), RN Fritz, RN Shilling, and Physician Assistant (PA) Havens (named Martin in the complaint) to go forward.

Frisby alleges that in 2020, while he was incarcerated at NCF, RN Kovar, RN Fritz, RN Shilling, and PA Havens violated his Eighth Amendment right to medical care and treatment.

Defendants argue that Frisby failed to properly exhaust his administrative grievance remedies prior to filing his complaint. Defendants have established that Frisby submitted one relevant grievance – NCF-2010-0494-28e – through each Step of the grievance process. Defendants have also shown that this grievance did not exhaust the claims Frisby asserts in his complaint.

As a starting point, Frisby did not name PA Havens at any step of the grievance process. Thus, he has failed to exhaust his claim against Havens. Frisby did name the other three remaining Defendants at various stages of the grievance process. But he still did not exhaust his claims against them. First, Frisby named RN Fritz in his Step I grievance, but only to indicate that RN Fritz accepted his kite and that he then received medical care. Frisby did not allege that RN Fritz denied him medical care in his Step I grievance. Then, in his Step II appeal, Frisby named RN Kovar for the first time and stated that she acted in an unprofessional manner. In Frisby's Step III grievance appeal, he asserted for the first time that he was denied medical treatment from RN Fritz and RN Shilling. In the opinion of the undersigned, Frisby failed to properly exhaust his claims against Defendants Kovar and Shilling by not naming them in his Step I grievance, and he failed to properly exhaust his claims

2

against Defendant Fritz by not indicating that she denied him medical care in his Step I grievance. It is respectfully recommended that the Court grant the two motions for summary judgment and dismiss Defendants without prejudice due to Frisby's failure to exhaust his claims against them.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally

5

furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

Defendants argue that Frisby failed to properly exhaust his grievance remedies against them. Frisby submitted one grievance, NCF-2010-0494-28e, through each step of the grievance process. At Step, I Frisby wrote the following:

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. SINCE "MAR", PRISONERS WAS GIVEN FACE MASKS, DUE TO THE COVID OUT BREAK, WHICH WAS A PRISONER CLOTHING MATERIAL. WEEKS LATER MY LIPS HAD BROKE OUT BAD. I WROTE MEDICAL WITH A KITE SOME TIME LATER, AND WAS DENIED SERVICES DUE TO THE COVID HAZARDNESS. I'VE WROTE ANOTHER KITE (6-05-2020) IT WAS TAKEN BY FRITZ BETH (OF 1)RN. I WAS ORDERED THREW PLAN/ACTION; TO DRINK A LOT OF WATER, AND ORDER PRODUCTS FROM STORE, WHICH I DID AND THAT DID NOT WORK. SO I WROTE ANOTHER KITE AND WAS CALLED BY PHONE TO BE SENT OVER, THE NEXT DAY. I WAS SEEN AND GIVEN SOME ANTI BIOTIC OINTMENT. WAS CALLED BACK A WEEK LATER FOR A CHECK UP, WHERE WE SEEN THAT DIDN'T WORK. SO I WAS RECOMMENDED SOME CREAM TO USE CALLED (BETAMETHASONE VALERATE CREAM) WHICH I WAS ONLY TO USE TILL A CERTAIN EXTENT. I'M STILL HAVING THESE PROBLEMS. I WROTE MEDICAL 10-10-20 AND WAS DENIED SERVICES AND TOLD TO DRINK WATER AN USE CHAPSTICK WHICH PREVIOUSLY WE SEEN _____ MADE THINGS WORSE. I'M NOT BEING GIVEN PROPER _____ TREATMENT.

(ECF No. 27-3, PageID.110.)

As shown above, the only Defendant that Frisby named in his Step I grievance was RN Fritz. But he only asserts that she took the kite that he wrote on June 5, 2020. Frisby did not assert a claim against RN Fritz in his complaint that involves his June 5, 2020 kite. Frisby's grievance stated that he received some medical care, but that it did not resolve his issue. Although Frisby states that he was denied medical services on October 10, 2020, he does not assert that any individual medical staff failed to provide him with medical care in his Step I grievance, and he failed to name the individual who allegedly denied him services on October 10, 2020.

Frisby's Step I grievance was denied because Frisby received treatment and his condition was resolved and was no longer a medical concern. The Step I response is shown below.

> **INVESTIGATION SUMMARY:**
> Electronic chart review completed. Frisby submitted healthcare requests regarding his lips on 6/5/20, 6/23/20, 9/27/20, 10/11/20, 10/29/20, 11/1/20, and 11/10/20. Frisby's lips were seen and assessed by nursing on the following dates: 6/25/20, 7/6/20, 7/7/20, 9/28/20, 11/2/20, and 11/10/20. Frisby's lips were evaluated by a medical provider on the following dates: 7/9/20, 7/24/20, and 9/9/20. Various creams and ointments were tried, along with instructions for use of lip balm from the store, use of a clean mask, avoidance of bleach, and ensuring adequate hydration. As of the most recent assessment on 11/10/20, it is noted that the peeling skin is resolved and although Frisby's lips continue with some hyperpigmentation, this is not concerning to either nursing or the medical provider.

(*Id.*, PageID.111.)

In his Step II appeal, Frisby focused on "Ms. Cobar" for the first time. Frisby's Step II appeals states the following:

> **STEP II — Reason for Appeal** 11/10/20 I woke up to an swollen and tighten top lip. I notified the unit C/O (Mr. Jenning) that morning immediately. He looked at my condition and made it aware to nursing once they made they round to our unit. I was seen by (Ms. Cobar) She became really unprofessional to her work. Precisely telling me: "She's tired of seeing my medical kites. And theres nothing they can do for. Because they dont have anything over there for me. And that im going to have to be my own detective an figure it out myself. Etc- PD.03.04.100 Health services Health care shall be available, accessible and organized for delivery in a human cost effective and efficent manner.(H). All seriously ill or injured prisoners shall recieve prompt medical attention as set forth in PD.03.04.125". Medical Emergencies: Appropriate staff shall be informed of any special needs of prisoners due to physical or mental problems. Also on 11/10/20 I verbally made my situation aware to the warden, She cut me off from speaking as she was walking. Avoiding to examine my conditions, AND Told me Im no berry denied Proper treatment medical has seen me, without understanding the Problem.

(*Id.*, PageID.108.)

Frisby's Step II appeal was denied because he continued to receive treatment, including treatment from the on-site physician with a consult from the Regional Medical Director, and because further follow-up care was planned. (*Id.*, PageID.109.) The Step II response is shown below.

10

> **Grievance Step II Response**                                                 **FRISBY 926352**
>
> **NOTE:** *An extension was requested and granted for this response to appeal.*
>
> Grievant claims that he has been denied adequate evaluation, proper diagnosis, and effective treatment re: an ongoing dermatological issue affecting the lip area.
>
> Investigation determined that grievant's issue was appropriately addressed by the Step I Respondent and is affirmed at the Step II Appeal. Review of the electronic medical record reveals that grievant has been repeatedly evaluated over the past several months re: his symptoms. Multiple interventions have been ordered, as deemed appropriate by nursing staff and the medical providers. Recent documentation indicates that the on-site physician consulted with the Regional Medical Director re: grievant's case. Treatment recommendations were received and have been implemented. Follow-up is planned.
>
> Grievant's claim is not supported. He has been evaluated and treated as deemed appropriate based on his clinical presentation. Grievant is encouraged to discuss his symptoms and concerns with the provider at his scheduled visits, to follow the plan of care as instructed, and to promptly notify Health Care if he experiences acute adverse symptoms in future and/or if he has any further concerns re: chronic symptoms or issues.
>
> Grievance denied.

(*Id.*)

Frisby appealed that denial to Step III of the grievance process. (*Id.*, PageID.112-114.) His Step III appeal was written on three pages of lined stationery rather than on the form provided by the prison. In this writing, Frisby named RN Shilling for the first time. (*Id.*) He asserted that he was denied examinations by RNs Shilling and Fritz. Frisby's reference to Shilling is shown below.

> those complications. I've kited medical numerous of times after that with the problems I were having. And was denied to be seen on multiple kite responses. By RN SHilling LS9, FRIZ (BFI RN, Mativich SMI LPN

(*Id.*, PageID.112.) Frisby also stated in his Step III grievance appeal that RN Kovar made rounds on November 2, 2020, and acted unprofessionally. (*Id.*) Frisby stated

11

that the Warden made rounds on November 10, 2020, and told him that he was receiving proper medical treatment. (*Id.*, PageID.113.) Frisby disagreed and informed the Warden that was untrue. (*Id.*)

Frisby's grievance was rejected because it was untimely at Step II. The Step III response is shown below.

**Step III Grievance Response**

RODNEY FRISBY          926352

NCF     20100494

Grievant alleges Health Care has not appropriately addressed his lip concerns.

In accordance with PD 03.02.130, this grievance is rejected as untimely at Step II. Grievant received Step I grievance response on November 23, 2020; per PD 03.02.130 (DD), this grievance should have been filed and received at Step II by December 9, 2020. However, this grievance was not received at Step II until December 21, 2020.

The grievance tracking number has been changed from NCF-20-10-0494-12 3 to NCF-20-10-0494-28e in order to reflect the grievance category code at Step III.

Grievance rejected.

Response of Bureau of Health Care Services          Date:     3/8/2021

(*Id.*, PageID.107.)

Defendants argue that the Step III rejection of the grievance establishes that Frisby failed to properly exhaust his claims. The Step III rejection was based upon a conclusion that Frisby failed to timely submit his Step II appeal. But, as shown above in the Step II response, Frisby's Step II appeal was denied on the merits and any timeliness issue was thus waived. (*Id.*, PageID.109.) A reasonable finder of fact could determine that this merits-based decision waived any pre-existing procedural defects. *See Raper v. Controneo*, 2018 WL 2928188, at *3 (W.D. Mich., June 12, 2018) (finding

12

that a grievance rejected for the first time at Step III based on a pre-existing procedural defect exhausted the claims stated within); *McBride v. Canlas*, No. 2:20-CV-212, 2021 WL 5332408 (W.D. Mich. Oct. 8, 2021) (same), *R&R adopted*, No. 2:20-CV-212, 2021 WL 5323769 (W.D. Mich. Nov. 16, 2021); *Sedore v. Greiner*, 2020 WL 8837441, at *7 (E.D. Mich. Sept. 21, 2020) ("As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word.").

Defendants alternatively argue that Frisby failed to properly name each Defendant in a grievance asserting the conduct alleged in the complaint. Frisby named RN Fritz in his Step I grievance, but only indicated that she took his kite dated June 5, 2020. Frisby did not assert any facts in the Step I grievance indicating that RN Fritz denied him medical care.

In the opinion of the undersigned, Frisby's Step I grievance fails to exhaust any of the claims asserted in his complaint against Defendants RN Fritz, RN Kovar (Cobar), RN Shilling, or PA Havens (Martin).

At Step II, Frisby named RN Kovar (Cobar) for the first time for being unprofessional. And at Step III, Frisby named RN Fritz and RN Shilling, asserting for the first time that they refused to see him for his medical concerns. The MDOC Policy Directive on the grievance process – P.D. 03.02.130 – provides that "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance

13

*through all three steps of the grievance process* in compliance with this policy." (ECF No. 27-2, PageID.95 (emphasis added).) Accordingly, when grievable issues arise, a prisoner must file a Step I grievance; the prisoner does not exhaust his claims by asserting new allegations of wrongdoing in an appeal to a pre-existing grievance. *See Burton v. Jones*, 321 F.3d 569, 574 ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). This does not mean that a prisoner may not add additional clarifying facts or name for the first time an unnamed Defendant at Step II of the grievance process. For example, where the plaintiff presents facts in his Step I grievance that could place the prison on notice "to conduct an investigation even though the grievance did not necessarily identify the particular individuals who might later be sued," adding those individuals at Step II may be sufficient to exhaust the claims against them. *Gardiner v. Corizon Health, Inc.*, No. 2:21-cv-167, at 4 (W.D. Mich. Feb. 7, 2023) (ECF No. 64 (Order Adopting In Part Report And Recommendation).)

Frisby failed to grieve his claims against Defendants in his Step I grievance and he failed to submit any facts indicating that each Defendant was involved in an alleged denial of medical care. By doing so, he failed to place the MDOC on notice

14

that his grievance was against the named Defendants. By adding Defendant Kovar's name for the first time at Step II, Frisby failed to properly exhaust his claims against RN Kovar. Similarly, by adding facts and naming Defendants Fritz and Shilling for the first time at Step III, Frisby failed to properly exhaust his claims against them. *See Mays v. Skytta*, No. 2:19-CV-00217, 2021 WL 1536024, at *7 (W.D. Mich. Mar. 16, 2021 (noting that a prisoner cannot properly exhaust new allegations by inserting the new allegations into a Step II or Step III appeal of Step I decision, unless the MDOC's appeal response indicates that it considered and addressed the new allegations in its Step II or Step III decisions), *report and recommendation adopted*, No. 2:19-CV-217, 2021 WL 1534692 (W.D. Mich. Apr. 19, 2021).

In summary, Frisby failed to name Defendant Havens (Martin) in his grievance. Thus, he failed to properly exhaust his claims against PA Havens. In addition, Frisby named the other Defendants at various stages of the grievance process, but he failed to include claims of deprivation of medical care against them in a manner that allowed the MDOC to address those claims. Accordingly, in the opinion of the undersigned, the four remaining Defendants are entitled to dismissal without prejudice due to Frisby's failure to properly exhaust his grievance remedies.

### V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant Haven's motion for summary judgment (ECF No. 33) and Defendants Kovar, Schilling, and Fritz's motion for summary judgment (ECF No. 26) and dismiss Defendants Havens, Kovar, Schilling, and Fritz without prejudice due to Frisby's

failure to properly exhaust his administrative remedies. If the Court accepts this recommendation, this case will be dismissed.

Dated: May 8, 2023                                  /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).